State v. Myers.

## THE STATE v. BERT R. MYERS, Appellant.

### Division Two, December 22, 1925.

1. **CONFESSION.** A confession extorted from a prisoner under arrest by the brutality of officers is not admissible in evidence.

2. ———: **Signed under Fear: Facts: Question for Jury.** Defendant was convicted of robbing from the person at midnight. He was nineteen years of age, and his employers testified that his reputation for truth and veracity was good. Two days after the robbery, he was arrested by two policemen, taken to the police station, and and there questioned by several detectives and policemen for six hours, and then, in a small room and in the presence of three or four officers and other men, signed the written statement prepared for him, and admitted as a confession. Questioned, he began to tell that he was with a young woman from about ten to one o'clock on the night of the robbery, and testified that when he did so one of the detectives hit him, and that he thereupon said, "If you won't beat me—if you won't kill me—I will make a statement." The detective testified that he struck defendant, but only pushed him along the side of the head with his open hand. Another witness present at the time testified that no threats were made, that he made the statement willingly, but also that defendant was in the police station six hours before the statement was read and signed by him. Defendant testified that when he began to tell the detective about being with the young woman, the detective knocked him over; that the officers would take him downstairs in the jail for a few minutes, then bring him back upstairs, and question him about the robbery; that they finally handed him a written paper and told him to sign it; that he dictated nothing contained in the statement; that he did not read it and could not read it, and did not know its contents; that the officers struck him several times, and

that he signed it because he thought he would be killed if he did not. His eyesight was defective, and when arrested the officers required him to leave his spectacles at his employers' place of business. Two women, both of unimpeachable character, testified that two or three days after his arrest they called at the jail and found his eyes blackened and his face bruised and swollen; and though it was within the power of the State to explain or rebut their testimony, this was not done. *Held*, that the confession was extorted by brutality and violence, after an unprovoked assault upon defendant by the detective, and should not have been admitted in evidence.

*Held*, by WALKER, P. J., dissenting, that this court cannot assume that the testimony of the State's witnesses that the confession was voluntary was unworthy of belief, and that the question whether the confession was extorted by maltreatment was for the jury to determine.

Criminal Law, 16 C. J., Section 1468, p. 717, n. 39; Section 1474, p. 720, n. 75; Section 1495, p. 728, n. 90; Section 1512, p. 734, n. 21.

Appeal from Jackson Circuit Court.—*Hon. O. A. Lucas,* Judge.

REVERSED AND REMANDED.

*William C. Irwin* and *Thomas A. Costolow* for appellant.

(1) The court erred in admitting in evidence an alleged written confession over the objection and exception of the defendant. State v. Thomas, 157 S. W. 330; State v. Ellis, 242 S. W. 952; State v. Powell, 167 S. W. 559; State v. Hart, 237 S. W. 473. (2) The alleged confession, as admitted in evidence by the court, contained evidence as to other transactions, which the court permitted to be read to the jury over the objection of the defendant. State v. Shobe, 268 S. W. 81; State v. Murphy, 201 Mo. 691; State v. Teeter, 144 S. W. 445.

*Robert W. Otto,* Attorney-General, for respondent; *C. E. Curtis* of counsel.

State v. Myers.

(1) The appellant in his motion for new trial assigns as error the admission in evidence of the alleged confession of the defendant. Evidence was presented on both sides and it was not shown conclusively that the confession was wrung from the defendant. There was evidence to show its voluntary character as well as evidence to show its involuntary character. Such treatment of a defendant by officers, as shown here, is frowned upon by the courts. The following cases show the nature of confessions admitted. State v. Brooks, 220 Mo. 83; State v. Armstrong, 203 Mo. 558; State v. Spaugh, 200 Mo. 597; State v. Jones, 171 Mo. 406; State v. Ruck, 194 Mo. 437; State v. McNeal, 237 S. W. 741; State v. Hart, 237 S. W. 473. (2) A confession is prima-facie presumed to be voluntary until the contrary is shown. A trial court is in a better position than an appellate court to determine whether the confession was voluntarily made. State v. Armstrong, 203 Mo. 554; State v. Hayes, 247 S. W. 168; State v. Seward, 247 S. W. 150. (3) The denial of its voluntary character makes it a question for the jury. State v. Reich, 293 Mo. 424; State v. Hayes, 247 S. W. 165; State v. Seward, 247 S. W. 150; United States v. Oppenheim, 228 Fed. 232; State v. Brooks, 220 Mo. 80. (4) The court committed no error in permitting that part of the alleged confession of defendant, which contained evidence of a transaction by defendant immediately preceding the robbery, to be read to the jury. The transaction, to which the confession referred, happened, according to the confession, immediately before the alleged robbery, and it could come in to show a common scheme or purpose to commit crime. State v. Carroll & Jacoy, 288 Mo. 405; State v. West, 246 S. W. 546; State v. Lewis, 273 Mo. 531; State v. Prunty, 276 Mo. 359; State v. Kolafa, 236 S. W. 302; State v. Sharp, 233 Mo. 269; State v. Sherman, 264 Mo. 374; State v. Ottuck, 184 S. W. 108; People v. Molineux, 168 N. Y. 305; Underhill's Criminal Evidence (3 Ed.) 147 et seq.

HIGBEE, C.—The defendant and James Ingram were charged by indictment with robbery in the first degree; that is, that on April 7, 1923, at the County of Jackson, they robbed one O. R. Noyes by taking $2.50 from his person. The alleged robbery occurred about midnight on Saturday, April 7th, and the defendant Myers was arrested on the following Monday. He was granted a severance. He was tried July 17th, the result being a disagreement by the jury. At the second trial, on September 28th, the jury found the defendant guilty as charged in the indictment, but failing to assess the punishment, the court fixed the punishment at a term of ten years' imprisonment in the penitentiary. From judgment and sentence the defendant appealed. It will not be necessary to detail all the evidence. The chief complaint made is that the court erred in admitting an alleged written confession by the defendant.

The defendant, who was then nineteen years old, was arrested at the office of his employers about four P. M., April 9th, by two policemen, and taken to the station where he was questioned by several detectives and policemen for six hours, when he signed the alleged confession of participation in the robbery on the previous Saturday night. These officers were armed with revolvers. We quote from the brief and argument of the learned Attorney-General:

"This case, as viewed by us, is subject to only one serious objection. The appellant, in his motion for a new trial, assigns as error the admission of the alleged confession of the defendant.

"As to the statement gotten from the defendant, Oliver R. Noyes, the prosecuting witness, testified as follows:

"He was at the police station at the time the defendant made his statement. Defendant was in a small room with three or four officers, and some other men. He was being questioned about the robbery of the witness. He started to tell these men that he was out with

a young woman from about ten o'clock until one o'clock on the night of the alleged robbery. When he did so, Detective Doarn hit him. The defendant told Doarn, 'If you won't beat me—if you won't kill me, I will make a statement.'

"Detective Doarn, who was present at the time the defendant made his statement, testified that he struck the defendant. He said, however, that he only pushed him along the side of the head with his open hand.

"Harvey L. Newman, who was present at the time the statement was made, testified that no threats were made before the defendant confessed, nor at any other time. He said that the defendant made his statement willingly. He testified, further, that the defendant was in the police station about six hours before his statement was read and signed by him.

"The defendant testified that when he was questioned by Detective Doarn about the alleged robbery, he started to tell the officer that he was out with a young woman at the time of the alleged robbery, but before he could finish the officer knocked him over. He said that the officers would take him downstairs in the jail for a few minutes and then bring him back upstairs and question him about the robbery. The officers finally handed him a written statement and told him to sign it. He did not dictate anything in the statement. He signed the statement because he thought he would be killed if he did not.

"Other witnesses testified that the defendant's face was beaten and bruised at the time they visited him in the jail and after the alleged confession was made.

"This evidence summarized shows that both the officer in charge of defendant and the prosecuting witness admitted that the defendant was struck by the officer before he made his statement."

In State v. Wooley, 215 Mo. 682, 115 S. W. 417, Fox, J., speaking for the court, said: "This question is not a new one in this court. It has repeatedly been in judgment before us and has received at our hands very

careful consideration. It is always an important question, for it must be conceded that statements made by a defendant, which are obtained by improper inducements, such as the flattery of hope, promise of immunity, or reward, or by the use of any violence or threats, should never be admitted in the trial of a criminal cause.''

See, to the same effect, State v. Brooks, 220 Mo. 83, 119 S. W. 353; State v. Wilson, 223 Mo. 188, 122 S. W. 671, and State v. Ellis, 294 Mo. 282, 242 S. W. 955.

In State v. Hart, 237 S. W. 477, Judge WHITE, then Commissioner of this court, said: "A confession, in order to be admissible, must be entirely voluntary. The fact that the accused is under arrest at the time he makes the confession is not sufficient to exclude his statement as being other than entirely voluntary. In order to exclude the confession on the ground that it is not voluntary, it must affirmatively appear that some inducement to confess was held out to the accused by or in the presence of some one having authority. The confession is presumed to be voluntary until the contrary appears. [Citing cases.] And it does not matter that the confession was elicited through questions of the officer or person in authority, and that such questions assumed the guilt of the defendant. [Citing cases.] The test is whether the statement was entirely voluntary. [State v. Smith, 222 S. W. l. c. 458, and cases cited.] Where the confession is induced by some influence, like a hope of clemency, or a fear of punishment, or violence from the officers or a mob, it is inadmissible.''

This question was considered at great length in State v. Thomas, 250 Mo. 212, 157 S. W. 330, where Judge BROWN quoted approvingly from Underhill on Criminal Evidence, Section 140, as follows:

"The practice of eliciting a confession by putting question after question to the accused is clearly not conducive to the procurement of truth, and the mode in which the confession was elicited may always be considered by the jury to determine whether they shall believe it.

"This is well illustrated by the methods employed by police officers and others in practicing upon the accused after his arrest what is known in police circles as the 'third degree.' This usually consists in subjecting the accused, after his arrest and while in custody, to a continuous and rigid examination accompanied with intimidation by threats and other means. The length of this process and the manner of its application depend largely upon the character of the official who administers it and upon that of the accused to whom it is administered.

"Where, on the one hand, the police official is sufficiently hardened and brutalized by his past experience and the accused is a determined and courageous person, it is likely to continue for some lengthy period without results, but where the accused is weak and nervous or feeble in mind or body, the carrying out of this method of modern torture will generally result in producing statements in answer to leading questions which can readily be twisted into a confession.

"The worthlessness as evidence of such statements needs but to be stated in order to be appreciated. Their probative force, or rather lack of force, is well recognized by all who have had any experience of human nature."

On page 211 the learned judge said: "However, officers in trying to secure confessions or admissions from a party suspected of crime should not forget that they have no legal right to compel a person under arrest to make any statement whatever—that no one can be compelled to furnish evidence against himself, and where the interrogatories are persisted in to an unreasonable extent, thereby producing mental anguish on the part of accused, the confession or admission thus obtained should be wholly rejected as involuntary, the same as if it had been obtained by the infliction of physical torture." [See also, 16 Corpus Juris, 717 and 720.]

The defendant's eyesight was defective. When arrested, the officers required him to leave his spectacles.

He testified he could not read the statement and did not know its contents. He showed by his several employers, covering a period of five years previous to his arrest, that his general reputation for truth and veracity was good. This is not questioned by the State. He testified that the officers struck him several times. When Mrs. McBride, a welfare worker for the juvenile court, and her friend, Mrs. Welsh, both of unimpeachable character, called at the jail two or three days after the defendant's arrest, they found his eyes blackened and his face bruised and swollen. The defendant was in custody from the time of his arrest, and it was within the power of the State to explain or rebut the testimony of these women. This was not done. On the whole showing there can be no reasonable doubt the confession was extorted by the brutality of the officers. But the evidence for the State is that while the defendant, a youth of nineteen, was being questioned, Officer Doarn committed an unprovoked assault upon him, whereupon defendant said, "If you won't beat me—if you won't kill me, I will make a statement." This was a part of the *res gestae*. It illuminated the situation like a flashlight; it clearly shows that the statement was coerced and involuntary and should have been excluded. The case was fairly submitted to the jury on the instructions, but for the error mentioned the judgment is reversed and the cause remanded for new trial. *Railey, C.,* concurs.

PER CURIAM.—The foregoing opinion of HIGBEE, C., is adopted as the opinion of the court. All concur, except *Walker, P. J.,* who dissents in separate opinion.

WALKER, P. J. (dissenting).—The majority opinion reverses and remands this case on the ground that the confession of the appellant was obtained under duress. I have carefully read the testimony and I do not concur in this conclusion. There was evidence *pro* and *con* as to the maltreatment of the appellant by police officers prior to and while he was making his confession. The

jury believed the witnesses for the State, who testified that the appellant was not maltreated. It is not within our province, where the evidence is in the condition disclosed by this record, to interfere with the verdict, unless we assume that the testimony of the witnesses for the State is unworthy of belief. The frequency with which the plea of maltreatment is made by criminals, especially when apprehended in the cities, in order to avoid what all the other evidence shows to be a voluntary confession, should prompt us, in the intelligent and wholesome administration of the law, to give heed to these pleas only upon the most convincing proof. I do not believe that the testimony of maltreatment in this case is worthy of belief, and I therefore dissent against the otherwise well-considered opinion of our learned Commissioner.